IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24–CV–438–D

| | | |
|---|---|---|
| ARTHUR SANGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NVR, INC. d/b/a RYAN HOMES, | ) | |
| | ) | |
| Defendant. | ) | |

On July 29, 2024, Arthur Sanger ("Sanger" or "plaintiff") filed a complaint against NVR,

Inc. ("NVR" or "defendant") [D.E. 1]. On October 7, 2024, NVR moved to dismiss the complaint

[D.E. 8] and filed a memorandum in support [D.E. 8-1]. See Fed. R. Civ. P. 12(b)(6).

On November 18, 2024, Sanger filed an amended complaint alleging (1) failure to rehire

in violation of Title I of the Americans with Disabilities Act ("Title I"), 42 U.S.C. §§ 12101, et seq.

("count one"), (2) retaliation in violation of Title V of the ADA ("Title V"), 42 U.S.C. §§ 12203,

et seq. ("count two"), (3) a hostile work environment in violation of Title I, ("count three") (4)

constructive discharge in violation of Title I ("count four"), and (5) failure to rehire in violation of

the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2

("count five") Am. Compl. [D.E. 10]. On December 20, 2024, NVR moved to dismiss the

amended complaint for failure to state a claim [D.E. 12] and filed a memorandum in support [D.E.

12-1]. See Fed. R. Civ. P. 12(b)(6). On January 30, 2025, Sanger responded in opposition [D.E.

17]. On February 13, 2025, NVR replied [D.E. 18]. As explained below, the court grants NVR's

motion to dismiss the amended complaint and dismisses without prejudice the amended complaint.

## I.

NVR is a Virginia corporation that constructs and sells residential properties. See Am.
Compl. ¶¶ 7–9. NVR employs sales representatives to sell and promote their properties in various
states. See id. at ¶ 19. On September 10, 2017, NVR hired Sanger as a sales representative. See
id. at ¶ 18. In 2020, NVR hired Pete Mielnik ("Mielnik") as Sanger's division manager. See id.
at ¶ 24. Over several months, Mielnik assigned Sanger to a series of different regional markets
and denied Sanger's request for a transfer to the Myrtle Beach market. See id. at ¶¶ 24–25. As a
result, Sanger alleges that his mental health began to deteriorate and that he began experiencing
migraines, sleep disruption, and panic attacks. See id. at ¶ 26. On February 3, 2022, Sanger told
Missy Nicula ("Nicula"), a NVR human resources representative, that he had been diagnosed with
"bipolar depression, generalized anxiety, and generalized depression." Id. at ¶¶ 17, 27. The same
day, Sanger's direct manager, Lisa Hess, told Sanger that he could not return to work "until he
underwent a mental health evaluation and was cleared to work." Id. at ¶ 28.

On April 19, 2021, Sanger returned to work. See id. at ¶ 30. Over the next three months,
Mielnik transferred Sanger to "underperforming locations." Id. at ¶ 31. Mielnik also denied
Sanger's requests for different assignments. See id. at ¶¶ 32–37. On July 16, 2021, Sanger
resigned from NVR. See id. at ¶ 38.

Starting in January 2023, Sanger repeatedly requested that NVR rehire him as a sales
representative. See id. at ¶¶ 40–50. From September 2023 to November 2023, Sanger
unsuccessfully applied eight times to five different NVR sales representative positions across the
country. See id. at ¶ 43. An unnamed NVR employee told Sanger that Mielnik "was blocking his
rehire." Id. at ¶ 44. In October 2023, Sanger contacted Nicula about employment at NVR. See
id. at ¶ 47. Nicula told Sanger that he owed NVR $22,391 in unearned commissions that NVR

2

had paid Sanger before his resignation. See id. Nicula explained that Sanger "was eligible for rehire only if he paid back [the] unearned commissions." Id. Sanger did not repay his unearned commissions, acknowledges his "responsibility" to repay those unearned commissions, but alleges that one NVR employee was rehired and not required to repay unearned commissions. See id. at ¶¶ 47, 50. On February 29, 2024, Sanger filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"). See Am. Compl. ¶ 12.

## II.

NVR moves to dismiss Sanger's amended complaint. See [D.E. 12] 1; Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, the amended complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

3

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

NVR contends that Sanger's Title I ADA claims are time-barred. See [D.E. 12-1] 8–9. The ADA incorporates the administrative enforcement provisions of Title VII of the Civil Rights Act of 1964, including the requirement that a plaintiff exhaust his administrative remedies by timely filing a charge with the EEOC concerning the alleged discrimination before filing suit in federal court. See 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012); Williams v. N.C. Admin. Off. of the Cts., 364 F. Supp. 3d 596, 601 (E.D.N.C. 2018);

4

Thiessen v. Stewart-Haas Racing, LLC, 311 F. Supp. 3d 739, 743 (M.D.N.C. 2018). The requirement to file a charge with the EEOC serves "two principal purposes." Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 407 (4th Cir. 2013). "First, it notifies the charged party of the asserted violation." Id. (quotation omitted). Second, "it brings the charged party before the EEOC and permits effectuation of the [ADA]'s primary goal, the securing of voluntary compliance with the law." Id. (quotation omitted).

Under Title I, Sanger had to file an EEOC charge within 180 days of each alleged act of discrimination. See 42 U.S.C. §§ 2000e-5(e)(l), 12117(a); Williams, 364 F. Supp. 3d at 601. The 180-day time requirement is not jurisdictional and is subject to waiver, estoppel, and equitable tolling. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Although the timeliness of administrative exhaustion is not jurisdictional, the failure to file an EEOC charge at all concerning the alleged discrimination can bar an ADA claim. See Fort Bend Cnty. v. Davis, 587 U.S. 541, 550–52 (2019). Such a failure results in loss of an "actionable" claim. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), superseded by statute on other grounds, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5; Davis, 587 U.S. 541, 550–52. Moreover, "only incidents that took place within the timely filing period are actionable." Morgan, 536 U.S. at 114; see Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 623–24 (2007), superseded by statute on other grounds, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5; Hentosh v. Old Dominion Univ., 767 F.3d 413, 417 (4th Cir. 2014), abrogated on other grounds by Davis, 587 U.S. 541; Cooper v. Smithfield Packing Inc., No. 5:10-CV-479, 2011 WL 3207912, at *3 (E.D.N.C. July 27, 2011) (unpublished).

On February 29, 2024, Sanger filed his EEOC charge. See Am. Compl. ¶ 12. Thus, the court dismisses any claim under the ADA concerning discrete acts of discrimination that occurred

5

before September 3, 2023. These time-barred acts include Sanger's employment at NVR, Sanger's resignation from NVR, and Sanger's three failed attempts to regain his position at NVR before September 3, 2023. Thus, the court dismisses Sanger's retaliation claim in count two, hostile work environment claim in count three, and constructive discharge claim in count four. See Zipes, 455 U.S. at 393; Morgan, 536 U.S. at 113–14; Irvin v. Versatrim, LLC, 737 F. Supp. 3d 297, 307–08 (E.D.N.C. 2024); Williams, 364 F. Supp. 3d at 604–05; Cooper, 2011 WL 3207912, at *3.

B.

In count one and count five, Sanger alleges that NVR discriminated on the basis of his disability when NVR declined to rehire him. See Am. Compl. ¶¶ 51–66, 111–15. Title I of the ADA applies to employment and prevents discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A plaintiff may assert an ADA claim against his employer based on (1) intentional discrimination or disparate treatment; (2) disparate impact; or (3) failure to make reasonable accommodations. See Raytheon Co. v. Hernandez, 540 U.S. 44, 52–53 (2003); Prentice v. North Carolina, No. 5:20-CT-3150, 2023 WL 2533164, at *4 (E.D.N.C. Mar. 3, 2023) (unpublished), aff'd sub nom. Prentice v. Haynes, No. 23-6243, 2023 WL 6442566 (4th Cir. Oct. 3, 2023) (per curiam) (unpublished). A plaintiff may prove such discrimination through direct evidence or through the McDonnell Douglas burden-shifting framework. See Raytheon, 540 U.S. at 49–50 & n.3; Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973).

Sanger need not plead a prima facie case to survive a motion to dismiss. See Swierkiewicz

6

v. Sorema N. A., 534 U.S. 506, 508 (2002). Nonetheless, Sanger must still plausibly "allege facts sufficient to state all the elements of [his] claim." Jordan v. Alternative Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006) (cleaned up), overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015) (en banc); see Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 569–70.

To establish a disability discrimination claim under Title I of the ADA, a plaintiff must prove "(1) that [he] has a disability, (2) that [he] is a 'qualified individual' for the employment in question, and (3) that [his employer] discharged [him] (or took other adverse employment action) because of [his] disability." Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 572 (4th Cir. 2015) (quotation omitted) (alteration in original); see Stanley v. City of Sanford, 145 S. Ct. 2058, 2071 (2025); EEOC v. McLeod Health, Inc., 914 F.3d 876, 883 (4th Cir. 2019). A disability under the ADA must "substantially limit[] one or more [of the plaintiff's] major life activities." 42 U.S.C. § 12102(1)(A); see J.D. by Doherty v. Colonial Williamsburg Found., 925 F.3d 663, 670 (4th Cir. 2019); Jacobs, 780 F.3d at 572–74. An adverse action includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); see Muldrow v. City of St. Louis, 601 U.S. 346, 354–55 (2024); Laird v. Fairfax Cnty., 978 F.3d 887, 893 (4th Cir. 2020).

The court only considers the six instances after September 3, 2023, when NVR did not rehire Sanger. Assuming without deciding that Sanger's mental health conditions qualify as a disability, Sanger fails to plausibly allege that he was otherwise qualified to be rehired by NVR or that NVR refused to rehire him but-for his disability. Sanger concedes that a condition of reemployment at NVR was that Sanger repay NVR over $22,000 in unearned commissions that

7

NVR paid Sanger before his resignation. See Am. Compl. ¶ 47. Sanger "understood that he would be responsible for paying back these commissions, and he acknowledged this responsibility." Id. Sanger, however, never repaid NVR. Thus, Sanger fails to plausibly allege that he was otherwise qualified for rehiring by NVR. See, e.g., Stanley, 145 S. Ct. at 2070–71; Jones v. Nationwide Life Ins., 696 F.3d 78, 88–89 (1st Cir. 2012); Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1996); Dicara v. Conn. Educ. Dep't, No. 3:08-CV-627, 2008 WL 5083622, at *4 (D. Conn. Nov. 26, 2008) (unpublished); cf. Gonzalez v. El Dia, Inc., 304 F.3d 63, 72 (1st Cir. 2002) (affirming summary judgment to employer on age discrimination claim when plaintiff failed to repay debt to employer).

Alternatively, Sanger fails to plausibly allege but-for causation. Sanger's failure to rehire claims hinge on his allegation that an unnamed NVR employee told Sanger that Mielnik was "blocking his rehire." Id. at ¶ 44. Sanger, however, fails to plausibly allege any direct evidence of discrimination, or evidence sufficient to proceed under the McDonnell Douglas burden-shifting framework. See, e.g., Gentry v. E. W. Partners Club Mgmt. Co., 816 F.3d 228, 235 (4th Cir. 2016) ("the ADA's text does not provide that a violation occurs when an employer acts with mixed motives."); Manning v. N. Carolina State Univ., 724 F. Supp. 3d 438, 455–56 (E.D.N.C. 2024); Williams v. Brunswick Cnty. Bd. of Educ., 725 F. Supp. 2d 538, 543–48 (E.D.N.C. 2010), aff'd, 440 F. App'x 169 (4th Cir. 2011) (per curiam) (unpublished); Dicara, 2008 WL 5083622, at *4. Thus, Sanger does not plausibly allege that he would have been rehired but-for his alleged disability. Accordingly, the court dismisses counts one.

As for count five, North Carolina courts do not recognize failure to rehire claims under the NCEEPA. See, e.g., Soliman v. Worldwide Language Res., Inc., No. 5:16-CV-748, 2016 WL 7494858, at *6 (E.D.N.C. Dec. 29, 2016) (unpublished), aff'd, 698 F. App'x 135 (4th Cir. 2017)

(per curiam) (unpublished); <u>Satterwhite v. Wal-Mart Stores E., L.P.</u>, No. 5:11-CV-363, 2012 WL 255347, at *3 (E.D.N.C. Jan. 26, 2012) (unpublished). Thus, count five fails.

III.

In sum, the court DENIES as moot defendant's motion to dismiss the complaint [D.E. 8], GRANTS defendant's motion to dismiss the amended complaint [D.E. 12], and DISMISSES WITHOUT PREJUDICE the amended complaint [D.E. 10]. The clerk shall close the case.

SO ORDERED. This 17 day of July, 2025.

JAMES C. DEVER III
United States District Judge